UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ZARRE L. MUNGER,

                Plaintiff,                    Case No. 1:19-cv-12830
                                           District Judge Thomas L. Ludington
v.                                     Magistrate Judge Anthony P. Patti

COMMISSIONER OF
SOCIAL SECURITY
ADMINISTRATION,

                Defendant.

_____/

## REPORT AND RECOMMENDATION TO GRANT IN PART AND DENY IN PART PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT (ECF No. 13), GRANT IN PART AND DENY IN PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (ECF No. 15), AFFIRM IN PART AND REVERSE IN PART THE COMMISSIONER'S DECISION, and REMAND THIS MATTER AS TO THE COMMISSIONER'S STEP 5 DETERMINATION

**I.     RECOMMENDATION**:  For the reasons that follow, it is

**RECOMMENDED** that the Court **GRANT IN PART and DENY IN PART**

Plaintiff's motion for summary judgment (ECF No. 13), **GRANT IN PART and**

**DENY IN PART** Defendant's motion for summary judgment (ECF No. 15),

**AFFIRM IN PART and REVERSE IN PART** the Commissioner's decision, and

**REMAND** this matter as to the Commissioner's Step 5 determination.

II.    **REPORT**

Plaintiff, Zarre L. Munger, brings this action under 42 U.S.C. §§ 405(g) and/or 1383(c)(3) for review of a final decision of the Commissioner of Social Security ("Commissioner") denying his application for supplemental security income (SSI) benefits.  This matter is before the United States Magistrate Judge for a Report and Recommendation on Plaintiff's motion for summary judgment (ECF No. 13), the Commissioner's cross-motion for summary judgment (ECF No. 15), Plaintiff's reply (ECF No. 16), and the administrative record (ECF No. 9).

A.    **Background and Administrative History**

Plaintiff filed his application in March/April 2016, alleging that his disability began on June 15, 2015, at the age of 35 (although just shy of 36).  (R. at 137.)  His application was denied on October 5, 2016.  (R. at 54-75.)

Plaintiff requested a hearing by an Administrative Law Judge ("ALJ").  (R. at 76.)  On April 17, 2018, ALJ Margaret O'Donnell held a hearing, at which Plaintiff and a vocational expert (VE), Elizabeth Pasikowski, testified.  (R. at 33-53; *see also* R. at 225.)  On August 29, 2018, ALJ O'Donnell issued an opinion, which determined that Plaintiff was not disabled within the meaning of the Social Security Act.  (R. at 13-32.)

Plaintiff submitted a request for review of the hearing decision.  (R. at 131-136.)  However, on August 2, 2019, the Appeals Council denied Plaintiff's request

for review.  (R. at 1-6.)  Thus, ALJ O'Donnell's decision became the

Commissioner's final decision.  Plaintiff timely commenced the instant action on

September 27, 2019.

### B.     Plaintiff's Medical History

The administrative record contains approximately 523 pages of medical

records, which were available to the ALJ at the time of the August 29, 2018

decision.  (R. at 32, 234-756 [Exhibits 1F-13F].)  These materials will be discussed

in detail, as necessary, below.

### C.     The Administrative Decision

Pursuant to 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4), at **Step 1** of the

sequential evaluation process, the ALJ found that Plaintiff had not engaged in

substantial gainful activity (SGA) since March 29, 2016, the application date.  (R.

at 18.)  At **Step 2**, the ALJ found that Plaintiff had the following severe

impairments:  schizoaffective disorder (bipolar type) and spine disorder.  (*Id*. at 18-

19.)  At **Step 3**, the ALJ found that Plaintiff did not have an impairment or

combination of impairments that met or medically equaled the severity of one of

the listed impairments.  (*Id*. at 19-20.)  **Between Steps 3 and 4** of the sequential

process, the ALJ evaluated Plaintiff's residual functional capacity ("RFC")[1] and

determined that Plaintiff had the RFC:

> . . . to perform medium work . . . [*i.e., exertional limitations*], except: the claimant can only occasionally climb and stoop.  He can frequently crouch, crawl, and kneel [*i.e., postural limitations*].  The claimant must avoid unprotected heights and dangerous, moving machinery.  He must avoid exposure to extreme cold and wetness [*i.e., environmental limitations*].  The claimant can engage in no more than occasional talking [*i.e., limitations on interacting with others*]. He is limited to routine, repetitive, but non-production rate paced tasks [*i.e., limitations on concentrating, persisting, or maintaining pace*].  He can only tolerate occasional changes in the work setting [*i.e., limitations on adapting or managing oneself*].  The claimant cannot interact with the public.  He can have occasional interaction with co-workers and supervisors, but no tandem tasks [*i.e., limitations on interacting with others*].

(*Id*. at 20-26.)  At **Step 4**, the ALJ determined that Plaintiff had no past relevant

work.  (*Id*. at 26.)  At **Step 5**, considering Plaintiff's age, education, work

experience, and RFC, the ALJ found that there were jobs that existed in significant

numbers in the national economy that Plaintiff could perform.  (*Id*. at 27.)  The

ALJ therefore concluded that Plaintiff had not been under a disability, as defined in

the Social Security Act, since March 29, 2016, the date the application was filed.

(*Id*. at 27-28.)

---

[1] The claimant's "residual functional capacity" is an assessment of the most the claimant can do in a work setting despite his or her physical or mental limitations. 20 C.F.R. §§ 404.1545(a), 416.945(a) (effective Aug. 24, 2012); *Howard v. Comm'r of Soc. Sec*., 276 F.3d 235, 239 (6th Cir. 2002).

**D.     Standard of Review**

The District Court has jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g).  When reviewing a case under the Social Security Act, the Court "must affirm the Commissioner's decision if it 'is supported by substantial evidence and was made pursuant to proper legal standards.'"  *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. at 2009) (quoting *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. at 2007)); *see also* 42 U.S.C. § 405(g) ("[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . .").  Under this standard, "substantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rogers*, 486 F.3d at 241 (quoting *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994)).  In deciding whether substantial evidence supports the ALJ's decision, the court does "not try the case *de novo*, resolve conflicts in evidence or decide questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007); *Rogers*, 486 F.3d at 247 ("It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant.").

Although the substantial evidence standard is deferential, it is not trivial. The Court must "'take into account whatever in the record fairly detracts from

[the] weight'" of the Commissioner's decision. *TNS, Inc. v. NLRB*, 296 F.3d 384, 395 (6th Cir. 2002) (quoting *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 487 (1951)). Nevertheless, "if substantial evidence supports the ALJ's decision, this Court defers to that finding 'even if there is substantial evidence in the record that would have supported an opposite conclusion.'" *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (quoting *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)). Finally, even if the ALJ's decision meets the substantial evidence standard, "'a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.'" *Rabbers*, 582 F.3d at 651 (quoting *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2007)).

### E.    Analysis

Plaintiff's two statements of error take issue with the ALJ's: (1) treatment of the opinion evidence, specifically the co-signed medical source statements (MSSs); and, (2) conclusion at Step 5. (ECF No. 13, PageID.801-804, 804-809; *see also* ECF No. 16, PageID.848-852.)

### 1.    Whether the ALJ properly analyzed the co-signed MSSs?

By way of background, Plaintiff's mental health records include those from Hope Network / Genesee Health System (R. at 234-270 [Ex. 1F], 271-319 [Ex. 2F], R. at 457-647 [Ex. 10F]) and the Taylor Psychological Clinic (R. at 442-456

[Ex. 9F]).  The ALJ expressly cited some of these records – as well as two consultative examination reports (R. at 404-408 [Ex. 5], 409-416 [Ex. 6]) – when reviewing evidence of Plaintiff's mental impairments (R. at 21-22), after which she made various assignments of weight to the opinion evidence (R. at 24-26).

Plaintiff's first statement of error concerns the ALJ's treatment of opinion evidence co-signed by Kandice Andrews, N.P. and Todd Rosen, M.D.  (ECF No. 13, PageID.801-804.)  Plaintiff has the burden of proof on this issue.  *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997).

### a.    Acceptable medical sources

According to the regulation in effect at the time Plaintiff filed his application for benefits in March/April 2016, the SSA needed "evidence from acceptable medical sources to establish whether you have a medically determinable impairment(s)."  20 C.F.R. §§ 404.1513(a), 416.913(a) (effective Sept. 3, 2013 to March 26, 2017).  Acceptable medical sources included licensed physicians, licensed or certified psychologists, licensed optometrists, licensed podiatrists, and qualified speech-language pathologists.  (*Id.*)  Thus, even though the ALJ acknowledged K. (Kandice) Andrews as Plaintiff's "treating nurse practitioner," (R. at 25), she, alone, would not have been an acceptable medical source; rather, under the applicable version of the regulation, she would have been deemed an "other source." 20 C.F.R. §§ 404.1513(d)(1), 416.913(d)(1).  By comparison, Todd

Rosen, M.D., a "medical doctor," would have been an "acceptable medical source."  20 C.F.R. §§ 404.1513(a)(1), 416.913(a)(1).

However, on March 27, 2017 (*i.e.*, by the time the ALJ issued her August 29, 2018 decision), new versions of 20 C.F.R. §§ 404.1513, 416.913 went into effect.  Subsections 20 C.F.R. §§ 404.1513(a)(1), 416.913(a)(1) no longer delineate "acceptable medical sources."  Instead, the regulation describes five categories of evidence:  (1) objective medical evidence; (2) medical opinion; (3) other medical evidence; (4) evidence from nonmedical sources; and, (5) prior administrative medical finding.  20 C.F.R. §§ 404.1513(a), 416.913(a).  As for claims filed before March 27, 2017, the regulation notes that the definition of "medical opinion" is found in 20 C.F.R. §§ 404.1527(a), 916.927(a).  20 C.F.R. §§ 404.1513(a)(2), 416.913(a)(2) ("Medical opinion.").  Perhaps for this reason, ALJ O'Donnell represented that she "considered opinion evidence in accordance with the requirements of 20 CFR 416.927."  (R. at 20.)

### b.    Dr. Rosen does not appear to be a treating source.

"Treating source" means "your own acceptable medical source who provides you, or has provided you, with medical treatment or evaluation and who has, or has had, an ongoing treatment relationship with you."  20 C.F.R. §§ 404.1527(a)(2), 416.927(a)(2).  The Social Security Administration will give controlling weight to a treating source's medical opinion if it "is well-supported by medically acceptable

clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in your case record . . . ."  20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2).  The ALJ must provide "good reasons," *id*., and the decision "must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight[,]" SSR 96-2P, 1996 WL 374188, *5 (S.S.A. July 2, 1996).[2]

In the instant appeal, the parties are at odds about the weight to be given to two MSSs, each of which – as acknowledged by the ALJ – is signed by Plaintiff's "treating nurse practitioner, K. Andrews" and "cosigned by Todd Rosen, M.D." (R. at 25, 419, 650.)  In support of his argument that "opinions from doctors who are part of a treatment team are still entitled to treating physician status regardless of the length of treatment[,]" Plaintiff cites two cases, *Shontos v. Barnhart*, 328 F.3d 418, 425-426 (8th Cir. 2003) and *Benton ex rel. Benton v. Barnhart*, 331 F.3d 1030, 1037-1039 (9th Cir. 2003), neither of which is binding upon this Court. (ECF No. 16, PageID.848.)  However, Plaintiff also relies upon a case in which this Court stated:  "Several courts have concluded that where a licensed social

---

[2] The rescission of SSR 96-2p is "effective for claims filed on or after March 27, 2017."  *Rescission of Soc. Sec. Rulings 96-2p, 96-5p, & 06-3p*, SSR 96-2P, 2017 WL 3928305 & 2017 WL 3928298 (S.S.A. Mar. 27, 2017).[1] *See also SSA NOTICE OF RESCISSION OF SSRS 96-2P, 96-5P, AND 06-3P.*, Soc. Sec. Rep. P 15636C. Plaintiff's application was filed in March/April 2016.  (R. at 137-142.)

worker or other unacceptable medical source is working as part of a treatment team and an acceptable medical source has 'signed off' on the opinions, they should be evaluated as a treating physician opinion . . . ."  *Martin v. Comm'r of Soc. Sec.*, No. 13-10420, 2014 WL 840228, at *17 (E.D. Mich. Mar. 4, 2014).  (ECF No. 16 PageID.848.)

Nonetheless, the Commissioner contends that "there is no evidence that Dr. Rosen ever *treated* Plaintiff."  (ECF No. 15, PageID.836 (emphasis added).)  In support of the Commissioner's argument that "there generally must be some evidence indicating that the two providers treated the claimant as part of a team[,]" he cites *Prill v. Comm'r of Soc. Sec.*, No. 1:14-CV-1334, 2016 WL 462942, at *5 (W.D. Mich. Feb. 8, 2016) ("a 'team' opinion that is signed both by a nurse practitioner and a physician may qualify as a treating physician's opinion 'when there is evidence demonstrating that the statement presented to the ALJ represented the opinions of a team effort, or that the medical facility used a team approach to a claimant's...treatment.'") (citation omitted).  (ECF No. 15, PageID.836-837.)  Yet, after the Government filed its brief, *Prill* was abrogated.  *See Hargett v. Comm'r of Soc. Sec.*, 964 F.3d 546, 552-553 (6th Cir. 2020) ("We decline to adopt a strict rule that a treating source who co-signs an opinion by a non-treating source must be part of the same team or practice as the non-treating source in order for the opinion to be considered an opinion of the treating source.").

The Court has not located a record of *any treatment* by Dr. Rosen, irrespective of whether he was part of Nurse Practitioner Andrews's team or practice – a point that is buttressed by Plaintiff's own motion and reply, which only refer to Dr. Rosen in association with the two MSSs.  (*See* ECF No. 13, PageID.798-800, 801, 804; ECF No. 16, PageID.848, 849.)  Therefore, while the co-signed MSSs are "medical opinions," 20 C.F.R. §§ 404.1527(a)(1), 416.927(a)(1), it appears that Dr. Rosen is not a "treating source," 20 C.F.R. §§ 404.1527(a)(2), 416.927(a)(2).

> **c.    Still, the ALJ considered and explained the assignment of weight to the MSSs co-signed by nurse practitioner Andrews and Dr. Rosen.**

Nurse Practitioner Andrews and Dr. Rosen completed mental impairment questionnaires on November 16, 2016 (R. at 417-420 [Ex. 7F]) and February 20, 2018 (R. at 648-650 [Ex. 11F]).  When assigning these opinions "partial weight," the ALJ acknowledged Andrews as Plaintiff's "treating nurse practitioner" and noted that the opinion was co-signed by Dr. Rosen.  (R. at 25.)  Thus, even assuming, *arguendo*, that Dr. Rosen's co-signature converts Andrew's "other source" opinion into one from an "acceptable medical source," it certainly seems that the ALJ acknowledged the treatment relationship factor.  20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2).  Additionally, the ALJ stated:

> The nurse's opinion that the claimant would be able to sustain an
> ordinary routine without special supervision, handle changes in

routine, and maintain focus while working in proximity to others, aligns with the totality of the evidence.  These findings are consistent with the claimant's unremarkable mental status evaluations, revealing him as alert, oriented, and cooperative, with normal concentration, memory, and judgment ([R. at 251], [R. at 279], [R. at 500-533]).  Yet, such benign objective findings do not support her opinion that the claimant would exhibit off-task behavior and have excessive absences.  Finally, the nurse opined that medication side effects *could* impair the claimant's work functioning.  Yet, the claimant generally denied psychotropic medication side effects, both in reports to his physicians, and in testimony ([R. at 493], Testimony [R. at 44]).

(R. at 25-26 (emphasis added).)  Thus, the ALJ considered the supportability

and/or consistency factors – 20 C.F.R. §§ 404.1527(c)(3),(4), 416.927(c)(3),(4) –

in affording "partial weight" to these opinions.

Plaintiff takes issue with the ALJ's assignment of only "partial weight" to

Dr. Rosen's MSSs, arguing that the ALJ "failed to apply the factors" set forth in 20

C.F.R. §§ 404.1527, 416.927 and SSRs 96-2p and 96-5p.  (ECF No. 13,

PageID.801-803.)  The substantive entirety of this argument is as follows:

In the instant case, two medical source statements were provided by the treating specialist, Dr. Rosen.  However, *the ALJ never referred to the factors set forth in 20 CFR §416.927 to evaluate his opinion*.  This is error.  Further, the Plaintiff has been prejudiced thereby.  When the limitations reported by Dr. Rosen, which include off task behavior of 15% (Dr. Rosen actually opined that the Plaintiff would be off task 20%) and absences from work of 4 days per month, it was the opinion of the vocational specialist that the jobs she had identified could not be performed (Tr. 51-52).  Accordingly, had the ALJ properly considered the opinion of the treating psychiatrist, there is a reasonable possibility that the ALJ would have found Mr. Munger to be more seriously limited, leading to a conclusion that he is disabled.  Thus, the ALJ erred by failing to give due consideration to the medical opinions of the treating specialist.

12

(ECF No. 13, PageID.804 (emphasis added).)  Plaintiff's underlying argument is simply incorrect, because – as detailed above – the ALJ discussed several factors; therefore, Plaintiff's related prejudice argument need not be considered.  Instead, the Undersigned agrees that "the ALJ articulated several well-supported reasons for giving little weight to the co-signed opinions . . . ," satisfying the requirements of 20 C.F.R. §§ 404.1527, 416.927.  (ECF No. 15, PageID.837.)  *See Biestek v. Comm'r of Soc. Sec.*, 880 F.3d 778, 785 (6th Cir. 2017) ("The ALJ need not perform an exhaustive, step-by-step analysis of each factor; she need only provide 'good reasons' for both her decision not to afford the physician's opinion controlling weight and for her ultimate weighing of the opinion.") (citations omitted), *aff'd sub nom. Biestek v. Berryhill*, 139 S. Ct. 1148 (2019).

In his reply, Plaintiff argues that the functional limitations assessed by Dr. Rosen are supported by Joshua Nnanji, M.D.'s January 2016 psychiatric evaluation (R. at 251, 253) and Joshua T. Fortney, R.N.'s February 2016 mental status examination (R. at 264).  (ECF No. 16, PageID.849.)  But, "the Commissioner's decision cannot be overturned if substantial evidence, or even a preponderance of the evidence, supports the claimant's position, so long as substantial evidence also supports the conclusion reached by the ALJ." *Jones*, 336 F.3d at 477.  Here, the ALJ provided "good reasons" for the weight given to Plaintiff's "treating source's medical opinion."  20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2).  Moreover, albeit

with respect to a different piece of evidence, the ALJ assigned "little weight" to

Nurse Fortney's January 27, 2016 opinion that Plaintiff was "unable to work[,]"

because Nurse Fortney "did not cite to objective evidence to support his

opinion[,]" and "disability is an issue reserved to the Commissioner."  (R. at 24,

245 [Ex. 2F]).  These are appropriate reasons to discount an opinion.  *See* 20

C.F.R. §§ 404.1527(c)(3) & (d), 416.927(c)(3) & (d).

Finally, Plaintiff contends that the ALJ adopted some of the MSS's

limitations but not others – such as his inability to meet competitive standards in

"maintaining attention for a two hour segment" or "sustaining an ordinary routine

without special supervision" or "performing at a consistent pace without an

unreasonable number and length of rest periods" (R. at 418) or that "interruptions

from psychologically based symptoms" would "interfere with the attention and

concentration needed to perform even simple work tasks at least 20% of an 8 hour

workday" (R. at 649).  (ECF No. 16, PageID.849.)  However, the ALJ explained

that the "benign objective findings do not support [an] opinion that the claimant

would exhibit off-task behavior and have excessive absences[,]" (R. at 26), and,

while an ALJ "may not pick and choose the portions of a single report, relying on

some and ignoring others, without offering some rationale for [her] decision[,]"

*Young v. Comm'r of Soc. Sec.*, 351 F. Supp. 2d 644, 649 (E.D. Mich. 2004)

(Lawson, J.), the ALJ appears to have done so.[3]

> **d.      Plaintiff has not shown reversible error in the ALJ's treatment of the mental health opinion evidence.**

The Court does not find error in the ALJ's treatment of the co-signed MSSs.

In sum, the ALJ has provided an "accurate and logical bridge to instruct the Court

of her reasoning." *Gross v. Comm'r of Soc. Sec.*, 247 F. Supp. 3d 824, 830 (E.D.

Mich. 2017). Although the ALJ assigned only little or partial weight to the various

pieces of mental health opinion evidence (R. at 24-26), the ALJ still found that

Plaintiff's RFC included several non-exertional limitations related to "interacting

with others," "concentrating, persisting, or maintaining pace," and, arguably,

"adapting or managing oneself[,]" (R. at 20). These are the three functional areas

in which the ALJ concluded at Step 2 that Plaintiff had "moderate limitation," (R.

at 19-20), and the ALJ provided an explanation for many of these limitations at the

conclusion of her mental health records review (R. at 22). Plaintiff having failed to

illustrate error in the ALJ's consideration of the co-signed MSSs, the opinion

evidence analysis should be affirmed.

> **2.      Whether the ALJ established the existence of work that Plaintiff can perform?**

---

[3] Plaintiff also cites Judge Murphy's opinion in *Burger v. Comm'r of Soc. Sec.*, No.
12-CV-11763, 2013 WL 2285375 (E.D. Mich. May 23, 2013). (ECF No. 16,
PageID.849.) It is not clear why, as the issues in that case were waiver and
credibility. *Burger*, 2013 WL 2285375 at *4-*6.

Plaintiff's second statement of error challenges the ALJ's Step 5 determination that jobs exist in significant numbers in the national economy that he can perform.  (ECF No. 13, PageID.804-809.)  On this issue, the Commissioner has the burden of proof.  *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 391 (6th Cir. 1999) ("The burden of proof shifts to the Commissioner only if the fifth step . . . is reached.").

### a.    SSR 00-4p

Plaintiff contends that, "when there is a direct conflict between the VE testimony and the requirements of the *Dictionary of Occupational Titles*, the ALJ must obtain an explanation from the VE for the conflict."  (ECF No. 13, 807-809.) In support of his argument that the ALJ must resolve conflicts between the DOT and the VE testimony, he cites SSR 00-4p, which provides that . . .

> . . . before relying on VE or VS evidence to support a disability determination or decision, our adjudicators must:  [1] Identify and obtain a reasonable explanation for any conflicts between occupational evidence provided by VEs or VSs and information in the Dictionary of Occupational Titles (DOT), including its companion publication, the Selected Characteristics of Occupations Defined in the Revised Dictionary of Occupational Titles (SCO), published by the Department of Labor, and [2] Explain in the determination or decision how any conflict that has been identified was resolved.

SSR 00-4P, 2000 WL 1898704, *1 (S.S.A. Dec. 4, 2000).  Likewise, the Commissioner points to SSR 00-4p's guidance on "The Responsibility To Ask About Conflicts," namely that the adjudicator will "[a]sk the VE or VS if the

evidence he or she has provided conflicts with information provided in the DOT[,]" and "[i]f the VE's or VS's evidence appears to conflict with the DOT, the adjudicator will obtain a reasonable explanation for the apparent conflict."  SSR 00-4p, 2000 WL 1898704 at *3-*4.  (ECF No. 15, PageID.839.)

### b.     The VE's testimony at the administrative hearing

At the administrative hearing, the ALJ described a hypothetical individual, whose RFC was similar to that eventually determined by the ALJ.  (R. at 20, 50-51.)  The VE testified that such an individual could perform the jobs of cleaner, packer and assembler.  (R. at 51.)  The ALJ asked the VE if her testimony was "consistent with the DOT[,]" and she responded, "[e]xcept for things that aren't listed, which would include off task, routine, repetitive, occasional talking and production-paced tasks, occasional changes, working with supervisors, coworker, no public and tandem.  That would all be based on my experience."  (R. at 51-52.)

The Commissioner contends that the ALJ's inquiry satisfied the Commissioner's burden.  (ECF No. 15, PageID.839-840.)  *See Lee v. Comm'r of Soc. Sec.*, 529 F. App'x 706, 715 (6th Cir. 2013) ("the ALJ asked the VE if her testimony was consistent with the Dictionary, and she answered that it was.  This effectively satisfied the Commissioner's burden."); *Joyce v. Comm'r of Soc. Sec.*, 662 F. App'x 430, 435 (6th Cir. 2016) ("an ALJ satisfies her duty to inquire if she asks the VE whether the VE's testimony is consistent with the DOT and receives

an affirmative response.").  Even Plaintiff cites a case that supports this principle.

*See Conn v. Sec'y of Health & Human Servs.*, 51 F.3d 607, 610 (6th Cir. 1995)

("the ALJ was within his rights to rely solely on the vocational expert's testimony.

The social security regulations do not require the Secretary or the expert to rely on

classifications in the *Dictionary of Occupational Titles.* 20 C.F.R. §

404.1566(d).").

### c.  Whether there are conflicts between the RFC and the hand packager and motor vehicle assembler jobs?

### i.  Cleaner

Plaintiff claims that the Commissioner's attempt "to carry this burden

through the testimony of the VE" was "unsuccessful," because none of the three

jobs identified by the VE are consistent with the ALJ's RFC determination.  (ECF

No. 13, PageID.805-807.)  The Commissioner, who addresses only the hand

packager and motor vehicle assembler positions, appears to agree that the RFC's

requirement that Plaintiff "must avoid exposure to extreme cold and wetness[,]" is

in direct conflict with the job of a cleaner, which involves constant wetness and/or

humidity (*i.e.*, 2/3 or more of the time).  DICOT 919.687-014 (Cleaner II).  (ECF

No. 15, PageID.842 n.2).

### ii.  Hand packager and motor vehicle assembler

However, the parties are at odds about whether the other two jobs are in

direct conflict with the RFC.  The Undersigned's comparison reveals that the

DOT's descriptions of these jobs – which the VE said were largely consistent with her testimony (R. at 51-52) – *may* conflict with the RFC's CPP and social interaction limitations:

- to "routine, repetitive, but non-production rate paced tasks[,]" because the job of a hand packager "[m]ay be designated according to whether high-production or small-lot packaging . . . [,]" and includes the designation, "Field 1: 898 - Production Services (stock chasing, timekeeping, etc.)," DICOT 920.587-018 (packager, hand); and,

- of "no tandem tasks[,]" because the job of a motor vehicle assembler – which has alternate titles of "quality worker" and "team member" – notes that the individual "[m]ay work as member of assembly group (team) and be assigned different work stations as production needs require or shift from one station to another to reduce fatigue factor."  DICOT 806.684-010 (assembler, motor vehicle).

(R. at 20, 27.)  In other words, the RFC's CPP limitation may conflict with the DICOT's hand packager descriptions concerning "production," and the RFC's limitation on interacting with others may conflict with the DICOT's motor vehicle assembler descriptions concerning "team."[4]

In support of the argument that "[t]here was no apparent conflict between the VE's testimony and the *Dictionary of Occupational Titles*[,]" the Commissioner emphasizes that an ALJ is only required to resolve "*apparent* conflicts."  (ECF No. 15, PageID.840-841.)  *See, e.g., Staymate v. Comm'r of Soc.*

---

[4] Plaintiff has separately filed the corresponding *Dictionary of Occupational Titles* descriptions.  (ECF No. 14.)

*Sec.*, 681 F. App'x 462, 468 (6th Cir. 2017) ("Under Social Security Ruling 00-4p, an ALJ has an affirmative duty to inquire as to whether a vocational expert's evidence conflicts with the information provided in the DOT, and to resolve any 'apparent conflicts.'"); *Ledford v. Astrue*, 311 F. App'x 746, 757 (6th Cir. 2008) ("As we recently explained in the unpublished opinion in *Martin* . . ., nothing in applicable Social Security regulations requires the administrative law judge to conduct his or her own investigation into the testimony of a vocational expert to determine its accuracy, especially when the claimant fails to bring any conflict to the attention of the administrative law judge."); and, *Beinlich v. Comm'r of Soc. Sec.*, 345 F. App'x 163, 168 (6th Cir. 2009) ("the ALJ is under no obligation to investigate the accuracy of the VE's testimony beyond the inquiry mandated by SSR 00–4p.") (citing *Lindsley v. Comm'r of Soc. Sec.*, 560 F.3d 601, 606 (6th Cir. 2009)).

However, Plaintiff contends that the VE's "testimony was inconsistent with factors which <u>are</u> listed in the *DOT* and its companion volumes with regard to the specific requirements of the jobs she had identified." (ECF No. 16, PageID.850 (italics in original).) Plaintiff has the edge on this argument, at least as to the CPP and interaction limitations, because the VE's testimony suggests that "production-paced tasks" and "tandem" tasks *are not* listed in the motor vehicle assembler (DOT 806.684-010) or the hand packager (DOT 920.587-018) positions (R. at 51-

52), yet, as delineated above, these positions may well involve production or team work.

### d.   Whether Plaintiff was required to probe the alleged deficiency at the administrative hearing?

Moreover, the Commissioner argues that Plaintiff's administrative representative did not question the VE "regarding the *purported conflicts* with the DOT[.]"  (ECF No. 15, PageID.841-842 (emphasis added).)  *See Kepke v. Comm'r of Soc. Sec.*, 636 F. App'x 625, 636 (6th Cir. 2016) ("Because Kepke failed to probe this alleged deficiency at the ALJ hearing, she forfeited this argument."); *Sims v. Comm'r of Soc. Sec.*, 406 F. App'x 977, 982 (6th Cir. 2011) ("Yes, the vocational expert's testimony could have been further refined; but as the district court pointed out, plaintiff's counsel had the opportunity to cross-examine, but asked only one question and did not probe the deficiency now identified on appeal."); *Reed v. Comm'r of Soc. Sec.*, No. 1:10-CV-350, 2011 WL 4571813, at *10 (W.D. Mich. Sept. 30, 2011) ("Plaintiff had an affirmative obligation to question the vocational expert if she believed that there existed a conflict between his testimony and the DOT.").

Although the Commissioner cites *Poe v. Comm'r of Soc. Sec.*, 342 F. App'x 149, 158 (6th Cir. 2009) ("The ruling does not require that the ALJ attempt to address or resolve conflicts between the testimony of a vocational expert and the Occupational Outlook Handbook.") and contends that the conflicts about which

Plaintiff now complains "would have been fodder for cross-examination," but "would not have been 'apparent' to the ALJ[,]" (ECF No. 15, PageID.841), Plaintiff convincingly notes that his representative would not know the ultimate RFC determination at the time of the administrative hearing.  (ECF No. 16, PageID.850.)

Perhaps more importantly, Plaintiff points to authority – albeit not binding but at least from another district within the Sixth Circuit – for the proposition that "it would be impractical for Plaintiff's counsel, who has no idea what jobs would be described by the VE, to research those jobs and to prepare cross-examination 'on the fly,'" because it would "plac[e] an unreasonable burden on the Plaintiff." (ECF No. 16, PageID.851-852.)  Specifically, when considering the then-Commissioner's argument that "it is a plaintiff's duty to elicit any inconsistencies with a vocational expert's testimony and the Dictionary of Occupational Titles (DOT) on cross examination," the court stated:

> In contrast to the circumstances in *Kepke*, Plaintiff had no notice that the vocational expert would identify Stuffer, DOT 731.685-014; Hand Packager, DOT 559.687-074; and Lens Inserter, DOT 713.687-026 in response to the ALJ's hypothetical question (Tr. 28).  Prior to the administrative hearing Plaintiff could not have conducted research about these three jobs on the DOT and O*NET.  Moreover, because there are literally thousands of jobs identified in the DOT, it is unlikely that Plaintiff had sufficient personal knowledge about these job descriptions to effectively cross-examine the vocational expert "on the fly."  In order to effectively cross-examine the vocational expert about the three identified jobs, Chinn would have needed to conduct research on the DOT and O*NET after the vocational expert identified

these jobs.  However, it would be impractical to conduct such research during the hearing. This places an unreasonable burden on a claimant. Therefore, the Commissioner's waiver argument fails.

*Chinn v. Berryhill*, No. 4:18-CV-00054-HBB, 2019 WL 1173374, at *7 (W.D. Ky. Mar. 13, 2019) (internal footnotes omitted).  The same court has engaged in similar analysis on at least three other occasions.  *See Wright v. Berryhill*, No. 4:18-CV-00021-HBB, 2019 WL 498855, at *6 (W.D. Ky. Feb. 8, 2019); *Gordon v. Berryhill*, No. 4:18 CV-00055-HBB, 2019 WL 360525, at *7 (W.D. Ky. Jan. 29, 2019); *Sorrell v. Berryhill*, No. 4:18-CV-00029-HBB, 2019 WL 360523, at *7 (W.D. Ky. Jan. 29, 2019).  *See also Washington v. Comm'r of Soc. Sec.*, 906 F.3d 1353, 1365 (11th Cir. 2018) (concluding that "SSR 00-4p is properly understood to impose an affirmative duty on the ALJs to identify apparent conflicts, ask the VE about them, and explain how the conflict was resolved in the ALJ's final decision. The text of the Ruling strongly suggests as much, and the inquisitorial nature of disability proceedings practically demands it.").  The Undersigned is persuaded by these cases and recommends that, here too, the Court reject the Commissioner's attempt to fault Plaintiff for failing to probe – at the time of the administrative hearing – purported conflicts between the DOT the RFC.

### F.   Conclusion

Plaintiff has not satisfied his burden to overturn the ALJ's treatment of the opinion evidence within the RFC determination, *Walters,* 127 F.3d at 529; thus, the

ALJ's RFC determination should be affirmed.  However, the Commissioner has not satisfied his burden to survive summary judgment as to Plaintiff's Step 5 argument, *Her*, 203 F.3d at 391.  To be sure, the Court acknowledges the Commissioner's related harmless error argument, *i.e.*, that "the existence of a single position can satisfy the Commissioner's burden of proof at step five . . . [,]" (ECF No. 15, PageID.842-843).  *Martin v. Comm'r of Soc. Sec.*, 170 F. App'x 369, 374 (6th Cir. 2006) ("even if the two positions about which there were inconsistencies had been excluded, the ALJ still could have reasonably found that Martin could perform the third position of assembler.").  But, for the reasons stated above, it is not clear that any of the three positions is consistent with the ALJ's RFC determination.

Accordingly, as detailed in the foregoing discussion, it is

**RECOMMENDED** that the Court **GRANT IN PART and DENY IN PART** Plaintiff's motion for summary judgment (ECF No. 13), **GRANT IN PART and DENY IN PART** Defendant's cross-motion for summary judgment (ECF No. 15), **AFFIRM IN PART and REVERSE IN PART** the Commissioner of Social Security's decision, and **REMAND** this matter to the Commissioner for a new hearing, at which the VE will testify and the ALJ will conduct a new Step 5 analysis, which addresses the concerns raised in this report.

## III.   PROCEDURE ON OBJECTIONS

The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within 14 days after being served with a copy, as provided for in Fed. R. Civ. P. 72(b)(2) and E.D. Mich. LR 72.1(d).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1981).  Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation.  *Willis v. Sec'y of Health & Hum. Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1273 (6th Cir. 1987).  Pursuant to E.D. Mich. LR 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," and "Objection No. 2," *etc.*  Any objection must recite precisely the provision of this Report and Recommendation to which it pertains.  Not later than 14 days after being served with a copy of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity.  Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR 72.1(d).  The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," *etc.*  If the Court determines that any objections are without merit, it may rule without awaiting the response.

Dated:   January 27, 2021

Anthony P. Patti
UNITED STATES MAGISTRATE JUDGE